## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TONI ANN QUAGLIARIELLO, CRYSTAL LEAR, MARIA SIMON, and CHRISTLYNN KARNS, individually and on behalf of all similarly situated persons,<br><br>                    Plaintiffs,<br><br>v.<br><br>LEONARD DiPASQUALE, individually and t/d/b/a LEAVE IT TO BEAVERS GENTLEMEN'S CLUB, ABC CORP. t/d/b/a LEAVE IT TO BEAVERS GENTLEMEN'S CLUB, JOHN DOE t/d/b/a LEAVE IT TO BEAVERS GENTLEMEN'S CLUB, DUANE CRAIG, and JOSEPH SHOEMAKER,<br><br>                    Defendants. | JURY TRIAL DEMANDED<br><br>Civ. No. _____ |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs Tori Ann Quagliariello, Crystal Lear, Maria Simon, and Christlynn Karns (collectively, "Plaintiffs") by and through their counsel, Mobilio Wood, on behalf of themselves and all others similarly situated, allege as follows:

## INTRODUCTION

1.     This lawsuit arises under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), the Pennsylvania Minimum Wage Act, 43 P.S. § 260.1 *et seq.* ("PMWA"), the Pennsylvania Wage and Payment Collection Law, 43 P.S. § 260.1 *et seq.* ("WPCL"), and Pennsylvania common law, as a result of Defendants' failure to pay Plaintiffs, and other similarly-situated employees who are members of the Class and Collective defined herein, all earned wages.

2.     Plaintiffs bring this action as: (i) a collective action pursuant to the FLSA; and (ii) a class action pursuant to Pennsylvania statutory and common law and Rule 23 of the Federal Rules of Civil Procedure, to recover unpaid minimum wages, unpaid overtime wages, and improperly withheld tips.  Plaintiffs, as well as the Collective and Class members, are former employees of Defendants, who worked for Defendants as adult entertainers ("Dancers").

3.     Defendants willfully violated the FLSA, the PMWA, the WPCL, and Pennsylvania common law (collectively, the PMWA, WPCL, and Pennsylvania common law are referred to as "PA Laws") by: (1) improperly classifying Dancers as independent contractors; (2) failing to pay Dancers minimum wage; (3) failing to pay Dancers overtime for hours worked in excess of 40 hours per week; and (4) unlawfully taking or withholding a portion of Plaintiffs' and other Dancers' gratuities received from customers.

4.      Specifically, Plaintiffs and other Dancers were not paid anything by Defendants.  Rather, Defendants required Plaintiffs and other Dancers to perform adult entertainment work, such as stage and VIP room performances, solely for tips, and  thereafter share the tips with Defendants.

5.      Over the past two decades, the United States Department of Labor ("DOL") and courts across the country have recognized that dancers are employees, not independent contractors, and thus are entitled to protection under various state and federal wage and hour laws.

## CLASS AND COLLECTIVE DEFINITIONS

6.      Plaintiffs bring this suit on behalf of the following similarly-situated Collective:

> All former employees of Defendants who worked as Dancers at Leave it to Beavers Gentlemen's Club at any time during the applicable limitations period covered by this Complaint, and who are Plaintiffs or elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 16(b) ("the Collective").

7.      Plaintiffs also bring this suit on behalf of the following similarly-situated Class:

> All former employees of Defendants who worked as Dancers at Leave it to Beavers Gentlemen's Club at any time during the applicable limitations period covered by this Complaint and who were harmed by Defendants' violations of the laws of the Commonwealth of Pennsylvania ("the Class").

Case 1:02-a-06000-UN   Document 402   Filed 04/27/20   Page 4 of 31

## PARTIES

8.     Plaintiff Toni Ann Quagliariello ("Plaintiff Quagliariello") is a resident of the Commonwealth of Pennsylvania who was employed by Defendants as a Dancer from in or about March 2012 through December 2019.  Defendants improperly classified Plaintiff Quagliariello as an independent contractor, failed to compensate her for all hours worked, and improperly retained her tips.

9.     Plaintiff Crystal Lear ("Plaintiff Lear") is a resident of the Commonwealth of Pennsylvania who was employed by Defendants as a Dancer from in or about April 2019 through November 2019.  Defendants improperly classified Plaintiff Lear as an independent contractor, failed to compensate her for all hours worked, and improperly retained her tips.

10.     Plaintiff Maria Simon ("Plaintiff Simon") is a resident of the Commonwealth of Pennsylvania who was employed by Defendants as a Dancer from in or about 2013 through January 2020.  Defendants improperly classified Plaintiff Simon as an independent contractor, failed to compensate her properly for all hours worked, and improperly retained her tips.

11.     Plaintiff Christlynn Karns ("Plaintiff Karns") is a resident of the Commonwealth of Pennsylvania who was employed by Defendants as a Dancer from in or about December 2013 through February 2020.  Defendants improperly

classified Plaintiff Karns as an independent contractor, failed to compensate her properly for all hours worked, and improperly retained her tips.

12.     Plaintiffs have consented in writing to be Plaintiffs in this action and have executed Consent to Sue forms.

13.     Defendant ABC Corp. t/d/b/a Leave it to Beavers Gentlemen's Club ("ABC Corp.") is a business organization that owns and/or operates an adult nightclub located at 1866 Tomhicken Road, Sugarloaf, Pennsylvania 18249, under the name "Leave it to Beavers" (the "Club").  At all times relevant and material herein, Defendant ABC Corp. t/d/b/a Leave it to Beavers employed Plaintiffs as Dancers, with the authority to hire and fire Dancers, promulgate rules, assignments, and conditions of employment, impose discipline, and exercise control over employee records.

14.     Defendant Leonard DiPasquale ("DiPasquale"), individually and t/d/b/a Leave it to Beavers, is an adult individual that owns and/or operates the Club.   At all times relevant and material herein, Defendant DiPasquale, individually and t/d/b/a Leave it to Beavers, employed Plaintiffs as Dancers, with the authority to hire and fire Dancers, promulgate rules, assignments, and conditions of employment, impose discipline, and exercise control over employee records.

5

15.    Defendant Duane Craig ("Craig") is a manager, officer, director, employee, agent, representative, alter ego, or co-conspirator of Defendants ABC Corp., DiPasquale, Joseph Shoemaker, and John Doe.  At all times relevant and material herein, Defendant Craig employed Plaintiffs as Dancers, with the authority to hire and fire Dancers, promulgate rules, assignments, and conditions of employment, impose discipline, and exercise control over employee records.

16.    Defendant Joseph Shoemaker ("Shoemaker") was a manager, officer, director, employee, agent, representative, alter ego, or co-conspirator of Defendants ABC Corp., John Doe, DiPasquale, and Craig through on or around 2018.  At all times relevant and material herein, Defendant Shoemaker  employed Plaintiffs as Dancers, with the authority to hire and fire Dancers, promulgate rules, assignments, and conditions of employment, impose discipline, and exercise control over employee records.

17.    Defendant John Doe, individually and t/d/b/a Leave it to Beavers, is an adult individual that owns and/or operates the Club.

18.    Unless otherwise specified herein, Plaintiffs shall refer to Defendants ABC Corp., John Doe, DiPasquale, Craig, and Shoemaker collectively as "Defendants," and each allegation pertains to each of the Defendants.

6

19.     At all relevant times Defendants have transacted business, including the employment of Dancers, within the Commonwealth of Pennsylvania, including within this judicial district.

20.     In engaging in the alleged conduct herein, all Defendants acted in the course, scope of, and in furtherance of the aforementioned relationship.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction over this action in accordance with 28 U.S.C. § 1331 and 29 U.S.C. § 201 *et seq*.

22.     This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

23.     Venue is properly laid in this judicial district pursuant to 28 U.S.C. § 1391, because acts or omissions giving rise to the claims of the Plaintiffs alleged herein occurred within this judicial district, and Defendants each regularly conduct business in and have engaged in the wrongful conduct alleged herein and, thus, are subject to personal jurisdiction in this judicial district.

## FACTUAL ALLEGATIONS

24.     The crux of the FLSA and PA Laws is, *inter alia*: (i) that all employees are entitled to be paid mandated minimum wages for all hours worked; (ii) that all employees are entitled to overtime compensation for all hours worked

in excess of 40 hours per week; and (iii) that all gratuities earned by an employee are the property of the employee.

25.     Contrary to these basic protections, Defendants improperly classified their Dancers, including Plaintiffs, as "independent contractors," despite, among other things, Defendants' near total control over them.  Consequently, Plaintiffs and the members of the Collective and Class were:  (i) deprived of the mandated minimum wage for all hours they worked; (ii) deprived of overtime compensation for all hours worked in excess of 40 per workweek; and (iii) forced to reimburse Defendants for Defendants' ordinary business expenses.

26.     Notwithstanding Defendants' classification of Dancers as independent contractors, the parties' economic relationship, as set forth below, makes clear that the Dancers were Defendants' employees.

**Defendants' Right to Control and Actual Control Over Dancers**

27.     Leave it to Beavers is operated by Defendants under uniform policies applicable to all the members of the Collective and Class.  Through these policies and procedures, Defendants maintained significant supervision and control over Plaintiffs and members of the Collective and Class.

28.     Defendants had the power to hire and fire Dancers.

29.     A Dancer's schedule was managed by the "Head Girl," who was assigned by Defendant DiPasquale, Craig, or Shoemaker.

30.    The Dancers' shifts were limited to the following times:

    a)  8:00 P.M. until 2:00 A.M. on weekdays (Tuesday through Thursday); and

    b)  8:00 P.M. until 4:00 A.M. on weekends (Friday through Saturday).

31.    Although the Dancers were expected to choose the specific days they worked at least one week prior, they were required to work at least two weekdays in order to be allowed to work two of the more desirable and lucrative weekend days.

32.    If too many Dancers were employed by Defendants at any given time, Defendants placed a "cap" on their respective shifts.

33.    If a Dancer missed a shift, she was disallowed from working on the weekend.

34.    Although Dancers supposedly were permitted to take time off, they were often pressured to come in during their time off or risk losing their employment.

35.    Dancers were required to work certain holidays or other special events, failing which they could be placed on "probation" and risk losing their employment.

9

36.     Dancers also were prohibited from auditioning or working at any other adult nightclubs, violation of which resulted in termination.

37.     Dancers were required to submit photographs of themselves to Defendants, which photographs were posted together with the Dancers' stage names under "The Ladies" section of Leave it to Beavers' website.

38.     Moreover, Defendants controlled the fees a Dancer could charge customers for her services.

39.     For instance, Defendants charged specific prices for "VIP" dances: to wit, $20.00 for one song, $60.00 for 15 minutes, $100.00 for 30 minutes, and $200.00 for 60 minutes.

40.     Additionally, Dancers were required to use their own money to pay for the music on the jukebox while the VIP Dance was occurring, in the amount of $2.00 per song.

41.     At the end of each night, Defendants paid each Dancer 50% of price of the VIP dances that she performed, minus any applicable fees and fines, as further discussed below.

42.     Defendants also mandated that Dancers charged $45.00 for "Hot Seat" dances, which were performed by two Dancers simultaneously.

43.     At the end of each night, Defendants paid each Dancer 25% of the price of the Hot Seat dances that she performed, minus any applicable fees and fines, as further discussed below.

44.     Finally, Defendants required that Dancers perform "Shower Shows" for customers free of charge, whenever Defendant Craig demanded that such shows took place.

45.     Defendants also instituted "probation" to punish Dancers for perceived misconduct, including making any mistakes, calling out as a result of illness, allegedly speaking ill of the manager and/or speaking ill of the manager's girlfriend.

46.     Additionally, Dancers were terminated if they received any discipline within their first 90 days of hire.

47.     Defendants also prohibited:

     c)     the use of lotion or oils by Dancers;

     d)     cellphone usage;

     e)     breaks; and

     f)     giving or receiving phone numbers to or from customers.

48.     On Friday and Saturday evenings or other busy weekday shifts, Defendants prohibited Dancers from retrieving their tips from the stage. Rather, the manager on duty or security swept the stage during and after Dancers'

performances. Dancers did not receive their tips until Defendants had already deducted what they believed to be their "share" – i.e., house fees, fines, or other tip-outs.

49. Dancers were also required to wear certain clothing, including lingerie, fishnets and/or other "stripper clothes" while performing at the club before becoming fully topless or nude.

50. While the Dancers could choose to wear whichever shoes they preferred, said shoes could only be worn inside the club and not outside for personal use even though they paid for those shoes themselves.

51. Defendants also mandated that Dancers choose from one of approximately 50 "stage names" to use while performing at the club.

52. While performing, Defendant Craig was responsible for determining the number of songs that the Dancers would perform to and determining the rotation that the Dancers would appear in.

53. Even after their performance was complete for the evening, the Dancers remained under the control of Defendant.

54. Specifically, Dancers could not change into their "street clothes" until permitted by Defendant Craig or Shoemaker, and Dancers were required to stay in a back room of the club until all customers had left the building.

## Other Aspects of the Parties' Economic Relationship

55.    Leave it to Beavers markets itself as "the area's premier BYOB gentlemen's club with only the finest exotic dancers."  Its primary offering is its Dancers, who render the adult entertainment service that is integral to Leave it to Beavers' business.

56.    Defendants own and/or maintain Leave it to Beavers' premises, pay its licensing fees, maintain a "state-of-the-art sound and lighting system" as well as a "shower stage," maintain an A.T.M. inside for debit or credit card transactions, and manage its personnel.  By contrast, Dancers did not have any significant investment in their employment.

57.    Though the Dancers' primary job responsibilities were to perform topless or nude dances on stage and privately for Defendants' customers, these responsibilities are not recognized as special skills.

58.    Despite unreasonable wages and conditions, many Dancers were long-term employees of Defendants.  For example, Plaintiffs Quagliariello, Simon, and Karns worked at Leave it to Beavers for more than six years.

## Defendants' Unlawful Wage Practices

59.    Rather than pay their Dancers the applicable minimum wage under Commonwealth and federal law, Defendants did not pay Dancers and, in effect, required Dancers to pay Defendants in order to work at the Club.

60.    Specifically, Defendants required their Dancers, including Plaintiffs and members of the Classes, to pay "House Fees" for each shift that Dancers worked.  Typically, the House Fee was $10.00 per shift.

61.    In addition to this House Fee, Defendants routinely issued fines to Dancers for failing to comply with Defendants' policies and procedures.

62.    For example, if a Dancer was late for her scheduled shift or was unable to appear for a shift, Defendants assessed a $10.00 or $20.00 "late fee."  In addition, it was in Defendants' discretion whether to assess additional late fees depending on the severity of the lateness.

63.    A Dancer was fined if she was not on the floor, dressed, and ready to perform at exactly 8:30 P.M. or otherwise was unwilling to "drop and go" immediately upon Defendants' demand (*i.e.*, to immediately undress and begin performing).

64.    A Dancer was fined if she was caught speaking to a patron about matters other than the establishment's business or if any personal acquaintances (friends, significant others, or family) were in the establishment at any time during business hours, whether the Dancer was speaking with them or not.

65.    Importantly, a Dancer was required to pay all fees and fines every night she worked regardless of the amount of tips she received.  If a Dancer did not

make enough money in tips to pay the House Fee or other fines at the end of a night, the fees and fines carried over until the next night.

## Defendants Unlawfully Retained Dancers' Tips

66.     According to the FLSA regulations promulgated by the DOL, "[t]ips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA."  29 C.F.R. 531.52.

67.     Indeed, the FLSA specifically provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 28 U.S.C. § 203(m)(2)(B).

68.     In direct contravention of the FLSA, Defendants routinely retained a portion of tips Dancers received from Defendants' customers and gave these funds to managers, among others.

69.     For example, Defendants would "sweep" the stage of all tip currency following regular dances, "Hot Seat" dances, and "Shower Shows." At the end of each night, Defendants purportedly paid each Dancer her earned proportion of the tips, minus any fees and punitive fines that the Dancer owed.

70.     With respect to "Shower Show" tips, in addition to the fees and fines withheld by Defendants, Defendants retained a set percentage of tips that increased as the total tip amount increased.

15

71.     As a result, customers who believed that they were tipping Dancers a certain amount actually were tipping them less, due to the fact that Defendants retained a portion of the tip.

72.     In addition, Defendants subjected Dancers to mandatory tip-outs. That is, Dancers were required to tip the manager on duty (*i.e.*, Defendant Craig and/or Shoemaker) and Defendants' security guards.  It was expected that Dancers paid at least $20 per weekday shift or $40 per weekend shift.  If Defendants felt that Dancers had a "good night," Defendants retained larger tips or the Dancers risked less favorable treatment in the future.

73.     In so doing, Defendants were able not only to pay the Dancers nothing, but also to have the Dancers subsidize the cost of employing the Club's managers.

74.     If a Dancer did not earn enough money in a given night to pay her required tip-outs, the tip-outs carried over into the Dancer's next shift.

75.     As a result of the mandatory house fees, required tip-outs, and assessed fines, Dancers sometimes received little to no actual compensation despite hours of work.

76.     In addition, Defendants did not compensate Plaintiffs or other members of the Classes for Defendants' use of the Dancers' images on Defendants' website.

77.    Evidence generally reflecting the number of uncompensated hours worked by, and tips retained from, Dancers is in the possession of Defendants.

78.    While Plaintiffs are unable to state at this time the exact amount owed to them and the Classes, Plaintiffs believe that such information will become available during the course of discovery.

79.    In the event that Defendants have failed to keep records, when an employer fails to keep complete and accurate time records, employees may establish the hours worked solely by their testimony, and the burden of overcoming such testimony shifts to the employer.  See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

80.    Plaintiffs bring this action on behalf of the Collective as a collective action pursuant to the FLSA, 29 U.S.C. §§ 206, 207, and 216(b).  The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).

81.    As described herein, Defendants maintained across-the-board policies applicable to all Leave it to Beavers Dancers through which Dancers were deprived of the mandated minimum wage for all hours worked, deprived of overtime compensation for all hours worked in excess of 40 per workweek, forced

to improperly share their gratuities with Defendants, and forced to reimburse Defendants for Defendants' ordinary business expenses.

82.     Plaintiffs, having been employed by Defendants and subjected to the same unlawful pay practices applicable to all Dancers at Leave it to Beavers, are similarly situated to the members of the Collective.

83.     Plaintiffs also bring this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of themselves and the Class for claims under the PA Laws.  The claims brought pursuant to the PA Laws may be pursued by all similarly-situated persons who do not opt out of the Class pursuant to Fed. R. Civ. P. 23.

84.     Upon information and belief, the members of each the Class are so numerous that joinder of all members is impracticable.  While the exact number of the members of the Class is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe there are at least forty (40) individuals in the Class.

85.     The claims of Plaintiffs are typical of the claims of the Class they seek to represent.  Plaintiffs and the members of the Class worked for Defendants as Dancers and were subject to the same compensation policies and practices, as set forth above.

86.     Common questions of law and fact exist as to the Class that predominate over any questions affecting Class members individually and include, but are not limited to, the following:

(a)  whether Dancers were improperly classified as independent contractors by Defendants;

(b)  whether Defendants failed to pay Dancers minimum wages for each hour worked;

(c)  whether Defendants routinely and as a matter of practice willfully and improperly retained portions of Dancers' tips as a policy and practice to subsidize Defendants' business expenses;

(d)  whether Defendants had a uniform policy and practice of willfully refusing to pay their employees for all hours worked;

(e)  whether Dancers were subjected to improper fines and monetary penalties;

(f)  whether Defendants failed to pay Dancers overtime compensation for all hours worked in excess of 40 per workweek;

(g)  whether Plaintiffs and members of the Class are entitled to compensatory damages, and if so, the means of measuring such damages;

(h)  whether Plaintiffs and members of the Class are entitled to restitution; and

(i)  whether Plaintiffs and the members of the Class are entitled to liquidated damages.

87.     Plaintiffs will fairly and adequately protect the interests of the Class as their interests are in alignment with those of the members of the Class.

Plaintiffs have no interests adverse to the Class they seek to represent, and have retained competent and experienced counsel.

88.     The class action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy.  The damages suffered by individual members of the Class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Class to individually seek redress for the wrongs done to them.

89.     Defendants have acted willfully in their violations of the FLSA and PA Laws.

## COUNT I

### FAIR LABOR STANDARDS ACT – MINIMUM WAGE VIOLATIONS
### (On Behalf of Plaintiffs and the Collective)

90.     Plaintiffs, on behalf of themselves and the Collective, reallege and incorporate by reference the paragraphs above as if they were fully set forth at length again herein.

91.     At all relevant times, Defendants had gross revenues in excess of $500,000.00.

92.     At all relevant times, each Defendant was an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

93.     At all relevant times, Defendants employed Plaintiffs and each of the Collective members within the meaning of the FLSA.

94.     Pursuant to Defendants' compensation policies, rather than pay Dancers the federally-mandated minimum wage, Defendants improperly classified Plaintiffs and other Dancers as independent contractors.

95.     At all relevant times, Defendants had a uniform policy and practice of willfully refusing to pay its employees for all hours worked.

96.     As a result of the Defendants' willful failure to compensate its employees, including Plaintiffs and the members of the Collective, the applicable federal minimum wage for all hours worked,  Defendants violated the FLSA, 29 U.S.C. § 201 *et seq.*

97.     Defendants' conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

98.     Due to Defendants' FLSA violations, Plaintiffs, on behalf of themselves and the members of the Collective, are entitled to recover from the Defendants, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees, costs, and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## COUNT II

### FAIR LABOR STANDARDS ACT – OVERTIME WAGE VIOLATIONS
### (On Behalf of Plaintiffs and the Collective)

99.   Plaintiffs, on behalf of themselves and the Collective, reallege and incorporate by reference the paragraphs above as if they were fully set forth at length again herein.

100.   At relevant times in the period encompassed by this Complaint, Defendants willfully refused to pay appropriate overtime compensation for all hours worked in excess of 40 hours per workweek due to Defendants' improper classification of Plaintiffs and Dancers as independent contractors.

101.   As a result of Defendants' willful failure to compensate their employees, including Plaintiffs and members of the Collective, the appropriate overtime compensation for all hours worked in excess of 40 hours per workweek, Defendants violated the FLSA, 29 U.S.C. § 201 *et seq.*

102.   Defendants' conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

103.   Due to Defendants' FLSA violations, Plaintiffs, on behalf of themselves and the members of the Collective, are entitled to recover from the Defendants, compensation for unpaid wages; an additional equal amount as

liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## COUNT III

### FAIR LABOR STANDARDS ACT – UNLAWFUL TIP RETENTION
### (On Behalf of Plaintiffs and the Collective)

104.   Plaintiffs, on behalf of themselves and the Collective, reallege and incorporate by reference the paragraphs above as if they were fully set forth at length again herein.

105.   At relevant times in the period encompassed by this Complaint, Defendants maintained a willful policy and practice of forcing Dancers to share a portion of their tips with Leave it to Beavers' managers and security personnel.

106.   29 U.S.C. § 203(m)(2)(B) provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

107.   As a result of Defendants' willful practice of requiring their employees, including Plaintiffs and members of the Collective, to share a portion of their gratuities with Leave it to Beavers personnel, Defendants violated  the FLSA, 29 U.S.C. § 201 *et seq.*

108.   Defendants' conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

109.   Due to Defendants' FLSA violations, Plaintiffs, on behalf of themselves and the members of the Collective, are entitled to recover from the Defendants, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## COUNT IV

### PENNSYLVANIA MINIMUM WAGE ACT– MINIMUM WAGE VIOLATIONS
### (On Behalf of the Plaintiffs and the Class)

110.   Plaintiffs, on behalf of themselves and the members of the Class, reallege and incorporate by reference the paragraphs above as if they were set fully forth at length again herein.

111.   At all relevant times, Defendants employed Plaintiffs and each of the Class members within the meaning of the PMWA.

112.   At all relevant times in the period encompassed by this Complaint, Defendants maintained a willful policy and practice of improperly classifying Plaintiffs and Dancers as independent contractors and, consequently, failing to pay these individuals the applicable minimum wage for each hour worked.

113.    Pursuant to Defendants' compensation policies, Defendants improperly classified Dancers as independent contractors rather than employees to avoid paying Plaintiffs and Dancers the Pennsylvania minimum wage.

114.    As a result of Defendants' willful practices, Defendants paid Plaintiffs and the members of the Class less than the Pennsylvania minimum wage for all hours worked.

115.    As a result of Defendants' unlawful violations, Plaintiffs, on behalf of themselves and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid minimum wages, liquidated damages, and attorneys' fees and costs.

## COUNT V

### PENNSYLVANIA MINIMUM WAGE ACT–
### OVERTIME WAGE VIOLATIONS
### (On Behalf of the Plaintiffs and the Class)

116.    Plaintiffs, on behalf of themselves and the members of the Class, reallege and incorporate by reference the paragraphs above as if they were fully set forth at length again herein.

117.    At relevant times in the period encompassed by this Complaint, Defendants maintained a willful policy and practice of refusing to pay appropriate overtime compensation for all hours worked in excess of 40 hours per workweek.

118.   Pursuant to Defendants' policies and practices of classifying Plaintiffs and Dancers as independent contractors, Plaintiffs and the members of the Class were not paid overtime for all hours worked in excess of forty per week.

119.   Due to the Defendants' violations, Plaintiffs, on behalf of themselves and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid overtime wages, liquidated damages, and attorneys' fees and costs.

## COUNT VI

**VIOLATION OF THE PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW**
**(On Behalf of Plaintiffs and the Class)**

120.   Plaintiffs, on behalf of themselves and the Class Members, reallege and incorporate by reference the paragraphs above as if they were fully set forth at length again herein.

121.   At all relevant times, Defendants employed Plaintiffs and each of the Class members within the meaning of the WPCL.

122.   Pursuant to the WPCL, 43 Pa. S. § 260.1 *et seq.*, Plaintiffs and the members of the Class were entitled to receive all compensation due and owing to them on their regular payday.

123.   As a result of Defendants' unlawful policies and practices, Plaintiffs and the members of the Class were  deprived of compensation due and owing.

124.   Further, due to Defendants' policy of deducting amounts from the tips of Plaintiffs and the Class to offset business expenses, Plaintiffs and the Class were subject to improper deductions from their compensation.

125.   Plaintiffs, on behalf of themselves and the members of the Class, are entitled to recover from Defendants the amount of unpaid compensation, and an additional amount of 25% of the unpaid compensation as liquidated damages.

## COUNT VII

### VIOLATION OF PENNSYLVANIA COMMON LAW – UNJUST ENRICHMENT
#### (On Behalf of the Plaintiffs and the Class)

126.   Plaintiffs, on behalf of themselves and the Class members, reallege and incorporate by reference the paragraphs above as if they were fully set forth at length again herein.

127.   Plaintiffs and the members of the Class were employed by Defendants within the meaning of the PA Laws.

128.   At all relevant times, Defendants maintained a willful policy and practice of denying Dancers their full share of gratuities.

129.   During the class period covered by this Complaint, Defendants maintained a willful policy and practice of having Dancers subsidize Defendants' business expenses by requiring Dancers to tip certain individuals a required minimum amount.

130. Moreover, Plaintiffs and Dancers were subjected to unlawful deductions from their gratuities.

131. Defendants retained the benefits of their unlawful deductions from the gratuities from Plaintiffs and Dancers under circumstances which rendered it inequitable and unjust for Defendant to retain such benefits.

132. Defendants were unjustly enriched by subjecting Plaintiffs and Dancers to such unlawful deductions.

133. As direct and proximate result of Defendants' unjust enrichment, Plaintiffs and the members of the Class suffered injury and are entitled to reimbursement, restitution, and disgorgement from Defendants of the benefits conferred by Plaintiffs and the Class.

134. Plaintiffs, on behalf of themselves and the members of the Class, are entitled to reimbursement, restitution and disgorgement of monies received by Defendants.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and/or on behalf of themselves and all other similarly situated members of the Collective and members of the Class, respectfully request that this Court grant the following relief against Defendants:

A.    Designation of this action as a collective action on behalf of the Collective, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b),

apprising the Collective members of the pendency of this action, and permitting the Collective members to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

B.      Designation of the action as a class action under Fed. R. Civ. P. 23(b)(3) on behalf of the Class;

C.      On the first claim for relief, an award of compensation for unpaid wages and an additional amount as liquidated damages to Plaintiffs and the members of the Collective;

D.      On the second claim for relief, an award of unpaid compensation for overtime and an additional amount as liquidated damages to Plaintiffs and the members of the Collective;

E.      On the third claim for relief, an award of compensation for withheld tips and an additional amount as liquidated damages to Plaintiffs and the members of the Collective;

F.      On the fourth claim for relief, an award of compensation for unpaid wages  and an additional amount as liquidated damages to the Plaintiffs and the members of the Class;

G.      On the fifth claim for relief, an award of unpaid compensation and an additional amount as liquidated damages for overtime to Plaintiffs and the members of the Class;

H.      On the sixth claim for relief, an award of unpaid compensation and an additional amount of 25% of the unpaid compensation as liquidated damages to Plaintiffs and the members of the Class;

I.      On the seventh claim for relief, an award of reimbursement, restitution, and disgorgement from Defendants of wages and gratuities improperly retained by Defendants to the Plaintiffs and the members of the Class;

J.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiffs and members of the Classes; and

K.      Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a jury trial on all issues so triable.

Respectfully submitted,

**Mobilio Wood**

Date:  4/27/2020          BY:   *s/ Peter C. Wood, Jr.*
                                Peter C. Wood, Jr., Esq. (I.D. No. 310145)
                                900 Rutter Ave., Box 24
                                Forty Fort, PA 18704
                                Phone: (570) 234-0442
                                Fax: (570) 266-5402
                                peter@mobiliowood.com

Matthew Mobilio, Esq. (I.D. No. 209439)
609 W. Hamilton St., Suite 301
Allentown, PA 18101
Phone: (610) 882-4000
Fax: (866) 793-7665
matt@mobiliowood.com