## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TONI ANN QUAGLIARIELLO, MARIA SIMON, and CHRISTLYNN KARNS, individually and on behalf of all similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>LEONARD DiPASQUALE, individually and t/d/b/a LEAVE IT TO BEAVERS GENTLEMEN'S CLUB and/or TAVERN IN THE GLEN, JOHN DOE t/d/b/a LEAVE IT TO BEAVERS GENTLEMEN'S CLUB, DUANE CRAIG, and JOSEPH SHOEMAKER,<br><br>Defendants. | No.  3:20-CV-0699<br><br>(Judge Mariani) |

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO CONDITIONALLY CERTIFY A FAIR LABOR STANDARDS ACT COLLECTIVE ACTION AND SEND NOTICE TO THE COLLECTIVE

Peter C. Wood, Jr., Esq. (PA  310145)
Matthew Mobilio, Esq. (PA 209439)
**MOBILIO WOOD**
900 Rutter Ave., Box 24
Forty Fort, PA 18704
Phone: (570) 234-0442
Fax: (570) 266-5402
peter@mobiliowood.com
matt@mobiliowood.com

Alex Pisarevsky, Esq. (NJ 029262008)
(Admitted *Pro Hac Vice*)
Erika R. Piccirillo, Esq. (NJ 098362014)
(Admitted *Pro Hac Vice*)
**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
Park 80 West-Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
Phone: (201) 845-9600
Fax: (201) 845-9423
ep@njlawfirm.com
ap@njlawfirm.com

*Co-Counsel for Plaintiffs*
*Toni Ann Quagliariello,*
*Maria Simon, and Chirstlynn Karns*

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ...............................................................................................2

II. RELEVANT PROCEDURAL HISTORY .............................................................3

III. STATEMENT OF FACTS ..................................................................................4

    A. Plaintiffs and the Proposed Collective are Similarly Situated ...........................4

        1. Defendants Apply Uniform Policies to All Dancers ...................................4

        2. Plaintiffs and the Proposed Collective were Subject to Identical Unlawful
           Wage Practices ........................................................................................6

IV. STATEMENT OF QUESTIONS INVOLVED ..................................................9

V. LEGAL ARGUMENT .........................................................................................9

    A. An FLSA Collective Action Should be Conditionally Certified and Notice
       Sent to the Collective ................................................................................9

    B. Plaintiffs have Met the Standard for Conditional Certification ......................11

    C. The Statute of Limitations Should be Equitably Tolled and Notice Should be
       Given for a Three-Year Period ...................................................................13

        1. Equitable Tolling is Warranted because Defendants Actively Misled the
           Dancers and Prevented them from Asserting Their Rights.......................15

    D. Defendants Should Provide Information Necessary to Effectuate
       Notice ......................................................................................................18

    VI. CONCLUSION..............................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Cases**

Archer v. Defs., Inc., No. 18-470, 2018 WL 5962470
    (D. Del. Nov. 14, 2018) .......................................................................19

Arroyo v. Aspect Construction Services, Inc., No. CV 19-5317,
    2020 WL 4382009 (E.D. Pa. July 31, 2020) ......................................19

Barrentine v. Arkansas-Best Freight Sys. Inc., 450 U.S. 728 (1981)......................9

Bonham v. Dresser Indus., 569 F.2d 187 (3d Cir. 1977).................................. 15, 16

Cahill v. City of New Brunswick, 99 F. Supp. 2d 464 (D.N.J. 2000)....................14

Callowhill v. Allen-Sherman-Hoff Co., Inc., 832 F.2d 269 (3d Cir. 1987) ............17

Dunkel v. Warrior Energy Services, Inc., 304 F.R.D. 193 (W.D. Pa. 2014) ..........12

Felix De Asencio v. Tyson Foods, Inc., 130 F. Supp. 2d 660 (E.D. Pa. 2001).......18

Garcia v. Vertical Screen, Inc., 387 F. Supp. 3d 598 (E.D. Pa. 2019) ...................19

Halle v. West Penn Allegheny Health Sys., 842 F.3d 215
    (3d Cir. 2016).......................................................................... 10, 11, 18

Hoffman-LaRoche Inc v. Sperling, 493 U.S. 165 (1989)........................... 10, 18, 19

Holmberg v. Armbrecht, 327 U.S. 392 (1946) .......................................................14

Kamens v. Summit Stainless, Inc., 586 F. Supp. 324 (E.D. Pa. 1984)...................17

Mack v. RMLS-HOP Restaurants PA, L.P., No. 3:19-CV-992,
    2020 WL 6551219 (M.D. Pa. Nov. 6, 2020) ......................................14

Meyer v. Riegel Prods. Corp., 720 F.2d 303 (3d Cir. 1983).…………............15, 16

Miller v. Beneficial Management Corp., 977 F.2d 834 (3d Cir. 1992)...................15

Neal v. Air Drilling Assocs., No. 3:14-CV-1104, 2015 WL 225432
   (M.D. Pa. Jan. 16, 2015) ...................................................................11

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380 (3d. Cir. 1994) .......15

Pearsall-Dineen v. Freedom Mortg. Corp., 27 F. Supp. 3d 567 (D.N.J. 2014) .......18

Podobnik v. U.S. Postal Serv., 409 F. 3d 584 (3d Cir. 2005) ..................................15

Ramadan v. Chase Manhattan Corp., 156 F.3d 499 (3d Cir. 1998) .......................14

Rotkiske v. Klemm, 890 F.3d 422 (3d Cir. 2019) ...................................................15

Stone v. Troy Construction, 935 F.3d 141 (3d Cir. 2019) .......................................14

Symczyk v. Genesis HealthCare Corp., 656 F.3d 189 (3d Cir. 2011) ...................13

Valdez v. United States, 518 F.3d 173 (2d Cir. 2008) .............................................17

Waltz v. Aveda Transportation & Energy Servs. Inc, No. 4:16-CV-000469,
   2016 WL 7440267 (M.D. Pa. Dec. 27, 2016) ......................................................12

Woodard v. FedEx Freight East, Inc., 250 F.R.D. 178 (M.D. Pa. 2008) ...............14

Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240 (S.D.N.Y. 2008) ..................17

Zavala v. Wal Mart Stores, Inc., 691 F.3d 527 (3rd Cir. 2012) ............................11

**Statutes**

29 U.S.C. § 216 .....................................................................................................10

29 U.S.C. § 255 .....................................................................................................14

29 U.S.C. § 256 .....................................................................................................14

**Regulations**

29 C.F.R. § 516.4 ..................................................................................................16

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TONI ANN QUAGLIARIELLO, MARIA SIMON, and CHRISTLYNN KARNS, individually and on behalf of all similarly situated persons, | No.  3:20-CV-0699 |
| | (Judge Mariani) |
| Plaintiffs, | |
| v. | |
| LEONARD DiPASQUALE, individually and t/d/b/a LEAVE IT TO BEAVERS GENTLEMEN'S CLUB and/or TAVERN IN THE GLEN, JOHN DOE t/d/b/a LEAVE IT TO BEAVERS GENTLEMEN'S CLUB, DUANE CRAIG, and JOSEPH SHOEMAKER, | |
| Defendants. | |

<u>**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO CONDITIONALLY**</u>
<u>**CERTIFY A FAIR LABOR STANDARDS ACT COLLECTIVE ACTION**</u>
<u>**AND SEND NOTICE TO THE COLLECTIVE**</u>

Plaintiffs Toni Ann Quagliariello, Maria Simon, and Chirstlynn Karns, by and through their counsel, Mobilio Wood, and Cohn Lifland Pearlman Herrmann & Knopf LLP, submit the instant Brief in support of their Motion to Conditionally Certify a Fair Labor Standards Act Collective Action and Send Notice to the Collective, averring in support thereof as follows:

## I.   <u>INTRODUCTION</u>

Plaintiffs Toni Ann Quagliariello, Maria Simon, and Chirstlynn Karns (collectively, "Plaintiffs")[1] submit this memorandum in support of their motion to conditionally certify a class of exotic dancers ("Dancers") employed by defendants Leonard DiPasquale, individually and t/d/b/a Leave it to Beavers Gentlemen's Club and/or Tavern in the Glen (the "Club"), Duane Craig, and Joseph Shoemaker (collectively, "Defendants") based on the fact that such employees are similarly situated with respect to Defendants' unlawful employment policies. Through the uniform application of unlawful wage and hour policies, Defendants have systematically denied Plaintiffs and the collective their full wages.

Plaintiffs and the collective were not paid any salary, let alone minimum wage or overtime, by Defendants. Plaintiffs and the collective members instead subsisted, prior to the filing of this lawsuit, entirely upon: (1) tips from customers, which Defendants regularly withheld for the payment of fines, "house fees," and tips to security guards and management, and (2) commissions Dancers received from customers' purchases of "private" dances.

It is particularly noteworthy that Defendants have repeatedly engaged in conduct specifically designed to prejudice the claims of Plaintiffs and the proposed

---

[1] The claims of former Plaintiff Crystal Lear were dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). (Doc. 32).

collective.  Specifically, Defendants have not only consistently failed to inform Dancers of their FLSA rights, but they have actively engaged in practices designed to convince the collective members that they are independent contractors, not employees, and to extract an impermissible waiver of the Dancers' FLSA rights.

Therefore, it is respectfully requested that this action be conditionally certified and that the statute of limitations be appropriately tolled, due to Defendants' failure to inform the class members of their FLSA rights and deliberate misrepresentation of the employment status of the collective members.

## II.    RELEVANT PROCEDURAL HISTORY

On April 27, 2020, Plaintiffs, on behalf of themselves and all other Dancers currently and formerly employed by Defendants during the relevant limitations period, initiated this lawsuit. (Doc. 1).  On June 29, 2020, the Club and Mr. Craig moved to dismiss the Complaint or, alternatively, for summary judgment. (Doc. 16).[2] On July 20, 2020, Plaintiffs filed an Amended Complaint (hereafter, the "Complaint"). (Doc. 23).  On August 3, 2020, the Club and Mr. Craig moved to dismiss or, alternatively, for summary judgment as to the Amended Complaint. (Doc. 25).  On February 9, 2021, Magistrate Judge Martin C. Carlson issued a Report and Recommendation that the motion to dismiss be denied without prejudice. (Doc.

---

[2] Defendant Joseph Shoemaker has not entered an appearance to date.

3

42).  On February 26, 2021, the Court issued an Order adopting the Report and Recommendation. (Doc. 43).

On March 11, 2021, the Club and Mr. Craig filed an Answer to the Amended Complaint. (Doc. 44).  The deadline to complete fact discovery is 180 days after the Court's ruling on conditional collective certification. (Doc. 39).

III.   **STATEMENT OF FACTS**

    A.   **Plaintiffs and the Proposed Collective are Similarly Situated**

        1.   **Defendants Apply Uniform Policies to All Dancers**

Leave it to Beavers advertises itself as "the area's premier BYOB gentlemen's club with only the finest exotic dancers." See May 27, 2021 Declaration of Toni Ann Qualiariello ("Quagliariello Dec."), ¶ 3 (attached hereto as **Exhibit "A"**). At any given time within the relevant period,[3] the Club has employed approximately 15 dancers. See Quagliariello Dec., ¶ 3; June 7, 2021 Declaration of Maria Simon ("Simon Dec."), ¶ 3 (attached hereto as **Exhibit "B"**); June 8, 2021 Declaration of Chirstlynn Karns ("Karns Dec."), ¶ 3 (attached hereto as **Exhibit "C"**).  However, the turnover among Dancers at the Club was high, meaning that the collective is

_____

[3] Plaintiffs seek to certify a collective of Dancers employed at the Club during the applicable FLSA limitations period. (Doc. 23), ¶ 6.  "The FLSA provides two (2) different statutes of limitation: three (3) years if the violation is willful, and two (2) years if it is not willful." Tyger v. Precision Drilling Corp., 308 F.Supp.3d 831, 849 (M.D. Pa. 2018).  Plaintiffs assert that Defendants' FLSA violations are willful. See, e.g., (Doc. 23), ¶¶ 92, 101, 106, 112.

likely to consist of well over 15 individuals. Quagliariello Dec., ¶ 3; Simon Dec., ¶ 3; Karns Dec., ¶ 3.

The Club also operated a "Beavers Queens Of the Castle!" Facebook page described as: "Secret, private and most importantly this is where all messages from the Club or Other Managment [sic] will Dispearsed! [sic] ONE Place, No Excuses…" Quagliariello Dec., at ¶¶ 15-16, Exh. "A." This page set forth a variety of rules that Dancers were required to observe including, but not limited to, the chain of command, use of the dressing room, and a requirement to participate in certain types of shows. Id. In addition, Plaintiffs and the proposed collective were, among other things: prohibited from using lotion or oils, required to wear certain clothing or perform entirely nude, required to use one of Defendants' chosen "stage names," could not use cell phones, were prohibited from taking breaks, and were prohibited from exchanging telephone numbers with customers. Quagliariello Dec., ¶ 14; Simon Dec., ¶ 13 Karns Dec., ¶ 13.

Dancers' shifts were scheduled by a "Head Girl" assigned by Defendants and, although Dancers were expected to choose specific days, they were required to work at least two weekdays in order to be allowed to work the desirable and lucrative weekend shifts. Quagliariello Dec., ¶ 6, 14(a); Simon Dec., ¶ 13(a); Karns Dec., ¶13(a). Though Plaintiffs and the collective were supposedly permitted to take time off, when they tried to do so, they were pressured to come in. Quagliariello Dec., ¶

14(d); Simon Dec., ¶ 13(d); Karns Dec., ¶ 13(d). Similarly, Plaintiffs and the collective were required to work holidays and/or special events that the Club was promoting.  Quagliariello Dec., ¶ 14(c); Simon Dec., ¶ 13(c); Karns Dec., ¶ 13(c). If a Dancer missed a weekday shift, Defendants disallowed her from working the more lucrative weekend shifts.  Quagliariello Dec., ¶ 14(b); Simon Dec., ¶ 13(b); Karns Dec., ¶ 13(b).  If Dancers auditioned or worked at another adult nightclub, it resulted in termination.  Quagliariello Dec., ¶ 14(e); Simon Dec., ¶ 13(e); Karns Dec., ¶ 13(e). The Club also required Plaintiffs and the proposed collective to submit and/or pose for photographs which the Club posted on its website or social media pages to advertise the Club's services.  Quagliariello Dec., ¶ 14(h), (i); Simon Dec., ¶ 13(h), (i); Karns Dec., ¶ 13(h), (i).

Defendants also attempted to have Dancers sign an "Independent Contractors & Freelance Artists Contract," which, among other things, purported to make them "contractors" and sought to have them waive "all damages, claims, demands & liabilities whatsoever of every name and/or nature …." Quagliariello Dec., ¶ 29; Simon Dec., ¶ 27; Karns Dec., ¶ 27.

### 2. Plaintiffs and the Proposed Collective were Subject to Identical Unlawful Wage Practices

In addition to generalized hiring and employment policies, Defendants also set uniform wage and hour rules applicable to all Dancers, which give rise to Plaintiffs' claims in this action.

6

There is no dispute that Defendants did not pay Plaintiffs anything. Amended Answer, ¶ 4.   Aside from paying no compensation to Dancers for the adult entertainment work performed, Defendants controlled the fees that a Dancer could charge customers for her services.   Specifically, Defendants set the prices that Dancers were permitted to charge for "VIP" dances, "Hot Seat" dances, and "Shower Shows." Quagliariello Dec., ¶ 14(j); Simon Dec., ¶ 13(j); Karns Dec., ¶ 13(j). Further, once Defendant Craig was hired as the Club's manager, he implemented a policy directing that "Shower Shows" be performed at no charge whatsoever to customers.   Quagliariello Dec., ¶ 21; Simon Dec., ¶ 19; Karns Dec., ¶ 19.   When Dancers performed "VIP" dances, they were required to use their own money to pay for the music on the Club's jukebox while the performances were occurring. Quagliariello Dec., ¶¶ 11, 24; Simon Dec., ¶¶ 10, 22; Karns Dec., ¶11, 22.   Then, Dancers received only a percentage of the fees that they were permitted to charge for their services, minus applicable fees and fines.   Quagliariello Dec., ¶ 20(b); Simon Dec., ¶ 18(b); Karns Dec., ¶ 18(b).

Notably, on busy shifts (particularly Friday and Saturday evenings), Defendants prohibited dancers from retrieving their gratuities from the stage. Instead, the manager on duty or security swept the stage during and after performances so Plaintiffs did not receive their tips until Defendants deducted their purported "share" of Plaintiffs' hard-earned compensation, which was all calculated

at Defendants' discretion. Quagliariello Dec., ¶ 23(a); Simon Dec., ¶ 21(a); Karns Dec., ¶ 21(a).

In addition to the withheld compensation from Plaintiffs' performances, Defendants also withheld or required Plaintiffs to pay "house fees" for each shift worked. On average, the house fee was $10.00 per shift.[4] Quagliariello Dec., ¶ 25; Simon Dec., ¶ 23; Karns Dec., ¶ 23.  Additionally, Defendants assessed "fines" to Plaintiffs for failing to comply with Defendants' uniform policies and procedures, including taking longer than thirty (30) minutes to get dressed, arriving to work after 8:10 P.M., getting dressed prior to the Club's closing, and/or refusing to dance on stage when demanded by Defendants. Quagliariello Dec., ¶ 26; Simon Dec., ¶ 24; Karns Dec., ¶ 24.

Not only were Plaintiffs and the proposed collective subject to unlawful retention of tips, fees, and fines, Defendants also subjected Dancers to mandatory tip outs to the manager on duty and the Club's security guards. For a weekday shift, Defendants expected that Dancers would tip out at least $10.00 and, for a weekend shift, Dancers would have to tip out $30.00.  Quagliariello Dec., ¶ 23(b); Simon Dec., ¶ 21(b); Karns Dec., ¶ 21(b).  In other words, not only did the Club not

---

[4] Despite these practices, the Club appears to represent itself as a generous place of employment on its private Facebook page for the Dancers, touting itself as having the "lowest house fee [a]round" because another club takes house fees of up to $50.00 on lucrative nights.  Quagliariello Dec. at Ex. "B", p. 3; Karns Dec. at Ex. "B", p. 3; Simon Dec. at Ex. "B", p. 3.

compensate the Dancers for work performed, Defendants required Dancers to subsidize the cost of employing the Club's own managers and security personnel.

## IV.   <u>STATEMENT OF QUESTIONS INVOLVED</u>

1.     Should this FLSA collective action be conditionally certified because there is a factual nexus between the manner in which the Defendants' employment practices and policies affected the Plaintiffs and the proposed collective?

> *Suggested Answer: Yes*

2.     Should the statute of limitations be equitably tolled because Defendants actively misled the Dancers respecting their wage and hour claims and prevented them from asserting their rights?

> *Suggested Answer: Yes*

3.     Assuming conditional certification is appropriate, should Defendants be required to provide Plaintiffs' counsel with the collective members' full names, addresses, e-mail address, and dates of employment, in order to effectuate notice to the collective?

> *Suggested Answer: Yes*

## V.   <u>LEGAL ARGUMENT</u>

### A.   **An FLSA Collective Action Should be Conditionally Certified and Notice Sent to the Collective**

The purpose of the FLSA is to provide protection to employees in an effort to ensure that all workers covered by the act receive a "fair day's pay for a fair day's work." <u>Barrentine v. Arkansas-Best Freight Sys. Inc.</u>, 450 U.S. 728, 739 (1981). Section 216(b) of the FLSA authorizes employees to bring an action on behalf of themselves and others "similarly situated" and provides that "[n]o employee shall be

a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

Congress has recognized that allowing individual employees subject to the same illegal practices to bring claims collectively is both fair and efficient. Hoffman-LaRoche Inc v. Sperling, 493 U.S. 165, 170 (1989). The United States Supreme Court established that courts have the discretion to begin involvement early and to facilitate notice to potential plaintiffs, including the authority to compel defendant-employers to provide names and address of potential plaintiffs, such that court-authorized consent forms could be sent to the collective, which "serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." Id. at 171-72.

In an FLSA "collective action," an employee must affirmatively opt-in to an action by filing a written consent with the Court. 29 U.S.C. § 216(b); Halle v. West Penn Allegheny Health Sys., 842 F.3d 215, 223-24 (3d Cir. 2016). Therefore, unlike in Rule 23 class actions, there are only two requirements to proceed as a representative action under § 216(b): (1) all plaintiffs must be "similarly situated" and (2) a plaintiff must consent in writing to take part in the suit. See Halle, 842 F.3d at 224.

The Third Circuit has embraced two different standards for certification: (1) a fairly lenient standard applied for conditional certification, which is sought here; and (2) a stricter standard applied to final certification whereby the court must actually determine whether the plaintiffs are similarly situated. <u>Zavala v. Wal Mart Stores, Inc.</u>, 691 F.3d 527, 535-36 (3rd Cir. 2012).  To succeed on a motion for conditional certification, the Plaintiffs need only meet the lenient burden of making a "modest factual showing" which demonstrates a factual nexus between the manner in which the Defendants' policy affected them and the manner in which it affected the proposed collective.  <u>Id.</u>  At the conditional certification stage, "the court does not weigh the evidence, resolve factual disputes, or reach the merits of plaintiff's claims." <u>Neal v. Air Drilling Assocs.</u>, No. 3:14-CV-1104, 2015 WL 225432, at *3 (M.D. Pa. Jan. 16, 2015). Courts do not consider whether plaintiffs are, in fact, similarly situated enough to opt-in plaintiffs to maintain a collective action until final certification.   <u>Halle</u>, 842 F.3d at 226.   The "sole consequence" of conditional certification is the dissemination of a court-approved notice to a potential collective. <u>Id.</u> at 224.

### B.   Plaintiffs have Met the Standard for Conditional Certification

Plaintiffs have met the "relatively light" and "modest" burden of showing that the proposed collective of Dancers employed at the Club is similarly situated. <u>Waltz v. Aveda Transportation & Energy Servs. Inc</u>, No. 4:16-CV-000469, 2016 WL

7440267, at *2 (M.D. Pa. Dec. 27, 2016). Courts typically rely on the pleadings and affidavits of the parties to determine whether this lenient standard has been met, and there is a "high rate of success at the conditional certification stage . . . because the district court bears an 'insignificant' risk of error by granting the motion." Id.

While Defendants routinely try to defeat conditional certification with merits arguments, Third Circuit case law is clear that the only relevant question here is whether the proposed members of a collective that would benefit from notice and an opportunity to join the action are similarly situated.  Courts are "not to consider the disposition of the merits of the claims," nor should they decide credibility issues or resolve factual disputes at this stage of the case.  Dunkel v. Warrior Energy Services, Inc., 304 F.R.D. 193, 199 (W.D. Pa. 2014).

Here, the Plaintiffs have made the modest factual showing necessary for conditional certification of the proposed collective of Dancers at the Club during the relevant period. The record before this Court contains ample evidence that the proposed collective was subject to a uniform Club policy of misclassification as independent contractors that had the effect of cheating the Dancers out of the wages they are legally owed.

As discussed *supra*, though Dancers were expected to work multiple shifts per week, they received no wage, let alone the appropriate minimum or overtime wage, from the Club. In addition, a large portion of the gratuities Dancers did receive from

customers were unlawfully retained by the Club. Moreover, the Club required the Dancers to bear the burden of paying its Managers and Security Guards out of the gratuities they received.

Apart from the Club's improper "no wage" policy, Plaintiffs and the members of the proposed collective were subject to the same unlawful policies, procedures, and scheduling requirements.   In effect, Defendants have sought not only to impermissibly transfer the entire burden of paying their Dancers to their customers, but also to use the Dancers to subsidize the Club's obligation to pay its non-Dancer employees.

C.     **The Statute of Limitations Should be Equitably Tolled and Notice Should be Given for a Three-Year Period**

To qualify for relief under the FLSA, "a party plaintiff must 'commence' his cause of action before the statute of limitations applying to his individual claim has lapsed." Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 200 (3d Cir. 2011) (citing Sperling v. Hoffman-LaRoche, Inc., 24 F.3d 463, 469 (3d Cir. 1994)).

That is to say, that an action only commences upon filing of a written consent. Id.   Therefore, disputes over discovery or a motion to dismiss may inequitably deprive potential members of an opt-in collective of time they would have received if they had notice of the lawsuit.

The FLSA provides that actions to recover "unpaid minimum wages, unpaid overtime compensation, or liquidated damages" must be commenced within two

years of the alleged violation or within three years after the cause of action accrued for willful violations. 29 U.S.C. § 255(a); see also Mack v. RMLS-HOP Restaurants PA, L.P., No. 3:19-CV-992, 2020 WL 6551219, at *4 (M.D. Pa. Nov. 6, 2020).  For named plaintiffs, an action is commenced on the date the Complaint is filed, if they are specifically named as a party plaintiff in the complaint and their written consent to become a party plaintiff is filed on such date in the court in which the action is brought. 29 U.S.C. § 256(a); Stone v. Troy Construction, 935 F.3d 141, 152 (3d Cir. 2019). However, unlike in a Rule 23 action, for an opt-in Plaintiff the action only commences upon filing of a written consent. Id.; 29 U.S.C. § 256(b); see also Cahill v. City of New Brunswick, 99 F. Supp. 2d 464, 479 (D.N.J. 2000) ("Until the non-named plaintiff officers file the prerequisite written consents with this court, they are not considered joined to a collective action and the statute of limitations on their claims is not tolled.").   "Therefore, in the absence of equitable tolling, the prospective opt-in plaintiffs' recovery will be limited to the two- or three- year period preceding their written consents." Woodard v. FedEx Freight East, Inc., 250 F.R.D. 178, 193 (M.D. Pa. 2008).

It is "a well-established principle of law that equitable tolling doctrines are 'read into every federal statute of limitation.'" Ramadan v. Chase Manhattan Corp., 156 F.3d 499, 504 (3d Cir. 1998) (quoting Holmberg v. Armbrecht, 327 U.S. 392, 396-97 (1946)). The Third Circuit has identified three scenarios in which equitable

14

tolling is appropriate: (1) if the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) if the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) if the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. Podobnik v. U.S. Postal Serv., 409 F. 3d 584, 591 (3d Cir. 2005) (citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d. Cir. 1994)), abrogated on other grounds by Rotkiske v. Klemm, 890 F.3d 422 (3d Cir. 2019). Defendants' conduct in this case warrants equitable tolling.

## 1. Equitable Tolling is Warranted because Defendants Actively Misled the Dancers and Prevented them from Asserting Their Rights

Defendants affirmatively and actively misled Plaintiffs and the other Dancers into viewing themselves as independent contractors, not employees protected by the FLSA. Equitable tolling is appropriate "where the employer's own acts or omissions have lulled the plaintiff into foregoing prompt attempts to vindicate [her] rights." Meyer v. Riegel Prods. Corp., 720 F.2d 303, 309 (3d Cir. 1983) (quoting Bonham v. Dresser Indus., 569 F.2d 187, 193 (3d Cir. 1977)), dismissing cert., 465 U.S. 1091 (1984). Though an employer's actions need not be "egregious acts of active deception" in order to toll the limitations period, Miller v. Beneficial Management Corp., 977 F.2d 834, 845 (3d Cir. 1992), they certainly were in this matter. Moreover, "a plaintiff's contemporaneous suspicion as to the legality of his

employer's action does not in itself preclude the invocation of equitable tolling." <u>Meyer</u>, 720 F.2d at 308.

In this matter, the Club actively and pervasively misled its Dancers about their rights to seek redress under the FLSA by purposely creating the false perception that they were independent contractors and seeking to have them waive any claims they may have had against the Club. The Club's tactics in this regard include attempting to have Dancers sign a document entitled, "Independent Contractors & Freelance Artist Contract." Quagliariello Dec., ¶ 29; Simon Dec., ¶ 27; Karns Dec., ¶ 27.

In addition, the Federal Regulations implementing the FLSA state, in pertinent part, "Every employer employing any employees subject to the Act's minimum wage provisions shall post and keep posted a notice explaining the Act, as prescribed by the Wage and Hour Division, in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy." 29 C.F.R. § 516.4. The failure to provide required notice of the governing legal requirements may also be a sufficient basis for tolling in this matter. <u>See</u> <u>e.g.</u>, <u>Bonham v. Dresser Industries, Inc.</u>, 569 F.2d 187 (3d Cir. 1978), *cert. denied*, 429 U.S. 821 (1978) (finding that an employer's failure to comply with similar notice requirements under the ADEA tolled the running of the 180-day administrative filing period "at least until such time as the aggrieved person seeks out an attorney or acquires actual knowledge of his rights."); <u>Callowhill v. Allen-</u>

Sherman-Hoff Co., Inc., 832 F.2d 269, 272 (3d Cir. 1987) (relying upon Bonham in finding the district court's denial of defendants' motion to dismiss correct because of defendants' failure to post the required notice); Kamens v. Summit Stainless, Inc., 586 F.Supp. 324, 328 (E.D. Pa. 1984) (relying on Bonham, because "an employer's failure to post a statutorily required notice of this type tolls the running of any period of limitations."); see also Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 259 (S.D.N.Y. 2008) (citing Valdez v. United States, 518 F.3d 173, 182-83 (2d Cir. 2008)) (finding that an extension of the FLSA statute of limitations from two to three years was warranted and that deliverymen were entitled to equitable tolling of statute of limitations under the FLSA in part because the employer failed to provide required notice of governing legal requirements in concealing from plaintiffs the existence of a cause of action).

Here, Defendants did not comply with this notice requirement and made no effort to do so, nor did they provide any other notice about Plaintiffs' rights under the FLSA. Quagliariello Dec., ¶ 28; Simon Dec., ¶ 26; Karns Dec., ¶ 26. Had Plaintiffs and the other Dancers known of their right to, among other things, earn a minimum wage, they ostensibly would have demanded higher wages, "challenging the economic foundations of what appears to have been a very profitable enterprise," that was paying no wages at all to its Dancers and was, in fact, requiring its Dancers

to subsidize wages to its management team and security guards. See Ke, 595 F.Supp.2d at 259.

Having misclassified its Dancers as independent contractors, there is no reasonable question that the Club failed to provide Plaintiffs and potential members of the collective with notice of their FLSA rights, much less posted the required notice at the Company describing those rights.

### D.   Defendants Should Provide Information Necessary to Effectuate Notice

As discussed *supra*, Court authorization of notice to the proposed members of a FLSA collective action "serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of an action." Hoffman-LaRoche, 493 U.S. at 172. The Supreme Court has recognized that courts have the authority to require employers to provide the names and addresses of putative class members, and courts regularly require such production to facilitate notice. Id.; see also Halle, 842 F.3d at 224.

To that end, Plaintiffs ask the Court to order the Club to provide Plaintiffs' counsel with a list of members of the collective, including each Dancer's full name, last known address, current or last known personal e-mail address, and dates of employment. See, e.g., Pearsall-Dineen v. Freedom Mortg. Corp., 27 F. Supp. 3d 567, 574-75 (D.N.J. 2014); Felix De Asencio v. Tyson Foods, Inc., 130 F. Supp. 2d 660, 662-63 (E.D. Pa. 2001).

The Plaintiffs further request that the Court allow their counsel to send a follow-up notice to any potential class members who have not responded after the mailing of the initial notice as well as order the Club to post the notice at the Club in conspicuous places as soon as the Club reopens.[5]  Such follow-up mailing and worksite notices contribute to dissemination among similarly-situated employees and serve the legitimate goal of avoiding a multiplicity of duplicative suits as described in Hoffman-La Roche.  For this reason, courts in this Circuit have approved the sending of a follow-up notice to class members who have not responded after the mailing of the initial notice and posting in worksites. Garcia v. Vertical Screen, Inc., 387 F. Supp. 3d 598, 608 (E.D. Pa. 2019) (Authorizing dissemination of notice by e-mail and finding that "Courts in this Circuit regularly permit follow-up notices and posting of the notice at work sites of the defendant.") (quoting Archer v. Defs., Inc., No. 18-470, 2018 WL 5962470, at *4 (D. Del. Nov. 14, 2018)); Arroyo v. Aspect Construction Services, Inc., No. CV 19-5317, 2020 WL 4382009, at *6 (E.D. Pa. July 31, 2020) (granting Plaintiff's request to obtain the putative class's current or last known e-mail address and allowing Plaintiff's request to send a follow-up notice e-mail to putative plaintiffs who did not respond to an initial mailing).

---

[5] Defendants previously indicated that the Club was closed due to the COVID-19 pandemic. (Doc. 27).

## VI.    **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that the Court conditionally certify this action as an FLSA representative action on behalf of all current and former Dancers employed by Defendants, who were not paid proper wages; authorize Plaintiffs' counsel to issue notice to the collective, and to send a follow-up notice to any potential class members who have not responded thirty days after the mailing and e-mailing of the initial notice; and require the Club to post notice of this lawsuit and consents to sue in a conspicuous location in the workplace. Plaintiffs further respectfully request that the Court order Defendants to provide Plaintiffs' counsel with the full name, last known address, current or last known personal e-mail address, and dates of employment of its current and former Dancers. Finally, it is respectfully submitted that this Court should order that the statute of limitations be tolled until conditional certification is granted and the proposed class members have had an opportunity to opt in.

Respectfully submitted,

Date: 6/9/2021          BY:    */s/ Peter C. Wood, Jr.*
                                         Peter C. Wood, Jr., Esq. (PA  310145)
                                         Matthew Mobilio, Esq. (PA 209439)
                                         **MOBILIO WOOD**
                                         900 Rutter Ave., Box 24
                                         Forty Fort, PA 18704
                                         Phone: (570) 234-0442
                                         Fax: (570) 266-5402
                                         peter@mobiliowood.com
                                         matt@mobiliowood.com

                                         *Co-Counsel for Plaintiffs*

Date: 6/9/2021          BY:    */s/ Alex Pisarevsky*
                                         Alex Pisarevsky, Esq. (NJ 029262008)
                                         (Admitted *Pro Hac Vice*)
                                         Erika R. Piccirillo, Esq. (NJ 098362014)
                                         (Admitted *Pro Hac Vice*)
                                         **COHN LIFLAND PEARLMAN**
                                         **HERRMANN & KNOPF LLP**
                                         Park 80 West-Plaza One
                                         250 Pehle Avenue, Suite 401
                                         Saddle Brook, NJ 07663
                                         Phone: (201) 845-9600
                                         Fax: (201) 845-9423
                                         ep@njlawfirm.com
                                         ap@njlawfirm.com

                                         *Co-Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TONI ANN QUAGLIARIELLO, MARIA SIMON, and CHRISTLYNN KARNS, individually and on behalf of all similarly situated persons,<br><br>              Plaintiffs,<br><br>v.<br><br>LEONARD DiPASQUALE, individually and t/d/b/a LEAVE IT TO BEAVERS GENTLEMEN'S CLUB and/or TAVERN IN THE GLEN, JOHN DOE t/d/b/a LEAVE IT TO BEAVERS GENTLEMEN'S CLUB, DUANE CRAIG, and JOSEPH SHOEMAKER,<br><br>              Defendants. | No.  3:20-CV-0699<br><br>(Judge Mariani) |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 9th day of June, 2021, the foregoing Brief in Support of Plaintiffs' Motion to Conditionally Certify a Fair Labor Standards Act Collective Action and Send Notice to the Collective was electronically filed and served on the following counsel of record via the Court's ECF filing system:

J. Michael Murray, Esq.
Steven D. Shafron, Esq.
Berkman, Gordon, Murray & DeVan

55 Public Square, Suite 2200
Cleveland, OH  44113
jmmurray@bgmdlaw.com
sshafron@bgmdlaw.com

J. Timothy Hinton, Jr., Esq.
Haggerty Hinton & Cosgrove LLP
203 Franklin Avenue
Scranton, PA 18503
timhinton@haggertylaw.net

Date: _6/9/2021_        BY:   _/s/ Peter C. Wood, Jr._
                              Peter C. Wood, Jr., Esq. (PA  310145)
                              **MOBILIO WOOD**
                              900 Rutter Ave., Box 24
                              Forty Fort, PA 18704
                              Phone: (570) 234-0442
                              Fax: (570) 266-5402
                              peter@mobiliowood.com

                              *Co-Counsel for Plaintiffs*