**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TONI ANN QUAGLIARIELLO,** | : |
| **MARIA SIMON, and CHRISTLYNN** | : CIVIL ACTION NO. 3:20-CV-699 |
| **KARNS, individually and on behalf of** | : (JUDGE MARIANI) |
| **all similarly situated persons.** | : |
| | : |
| **Plaintiffs,** | : |
| | : |
| **v.** | : |
| | : |
| **LEONARD DiPASQUALE, individually** | : |
| **and t/b/d/a LEAVE IT TO BEAVERS** | : |
| **GENTLEMEN'S CLUB and/or** | : |
| **TAVERN IN THE GLEN, JOHN DOE** | : |
| **t/d/b/a LEAVE IT TO BEAVERS** | : |
| **GENTLEMEN'S CLUB, DUANE CRAIG,** | : |
| **and JOSEPH SHOEMAKER,** | : |
| | : |
| **Defendants.** | : |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

Plaintiff's Motion to Conditionally Certify a Fair Labor Standards Act Collective Action and Send Notice to the Collective (Doc. 45) is pending before the Court.  With the Motion, Plaintiffs request the Court to take the following actions: conditionally certify "a collective of all current and former dancers who provided services at Leave it to Beavers Gentlemen's Club from April 27, 2017, through the entry of final judgment in this case" (Doc. 45 ¶ 1); toll the statute of limitations for all potential collective members from April 27, 2020, to a deadline to be established by the Court for the collective members to file their respective

consents to join this collective action (*id.* ¶ 2); direct Defendant DiPasquale to provide

relevant contact information for potential class members (*id.* ¶ 3); permit Plaintiffs' counsel

to send notice of the pendency of this action to potential class members (*id.* ¶ 4); permit

Plaintiffs' counsel to send a follow-up notice to potential collective members who have not

responded after the mailing of the initial notice (*id.* ¶ 5); and order Defendants to post notice

of the pendency of the collective action at the Leave it to Beavers Gentlemen's Club (*id.* ¶

6).

Defendants assert that conditional certification should be denied because Plaintiffs

have failed to demonstrate that they are similarly situated to other potential members of the

class collective.  (Doc. 47 at 4.)  They also maintain that the statute of limitations should not

be tolled for opt-in plaintiffs (*id.* at 13) and the production of the information Plaintiffs seek is

not workable (*id.* at 17).

For the reasons discussed below, the Court concludes that Plaintiffs' Motion is

properly granted.

## II. Background

In his Report and Recommendation ("R&R") (Doc. 42) addressing the Motion of

Defendants Leonard DiPasquale and Duane Craig to Dismiss the Amended Complaint

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, in the alternative, for Summary

Judgment Under Fed. R. Civ. P. 56 (Doc. 25), Magistrate Judge Martin C. Carlson set out

the following Statement of Facts of the Case:

The background of this case is taken from the well-pleaded factual allegations set forth in the amended complaint [(Doc. 23)], which are accepted as true for purposes of this report only.

The plaintiffs are former and/or current employees at the gentleman's club owned by the individual defendants, Leave it to Beaver's ("the Club"), and were employed as dancers at the Club at various times between 2012 and the present. The crux of the amended complaint is that during their employment at the Club, the defendants failed to pay mandated minimum wages, failed to pay overtime compensation, and withheld certain amounts of gratuities earned by the plaintiffs in violation of state and federal law.

On this score, it is alleged that the defendants had complete control over the dancers' schedules and compensation. This included capping the dancers' shifts if too many dancers were employed at any given time (Doc. 23, ¶ 31); determining the amount of money the dancers could charge for certain performances (*Id.*, ¶¶ 40, 43); prohibiting the dancers from retrieving their own tips from the stage following a performance (*Id.*, ¶ 49); and requiring the dancers to pay "House Fees" for each shift, as well as charging extra fees or "fines" if the dancers were late to their shift (*Id.*, ¶¶ 61-66). The amended complaint further alleges that due to these employment practices by the defendants, the dancers "sometimes received little to no actual compensation, and could actually end up owing Defendants tips to be paid from future shifts, despite hours of work." (*Id.*, ¶ 78).

Thus, the plaintiffs filed this action on April 27, 2020 (Doc. 1) and filed an amended complaint on August 3, 2020, which is the operative complaint in this case. (Doc. 23). The amended complaint asserts collective and class action claims on behalf of the plaintiffs and other similarly situated individuals under the FLSA, the PMWA, and the WPCL, alleging minimum wage violations, overtime wage violations, and unlawful tip retention.

The defendants then moved to dismiss the complaint, or in the alternative for summary judgment [(Doc. 25)], arguing that the plaintiffs had not sufficiently pleaded facts to support their FLSA claims, and further, that the court should decline to exercise supplemental jurisdiction over the state law claims. (Doc. 25).

(Doc. 42 at 2-3.)

Magistrate Judge Carlson recommended denying Defendants' Motion.  (Doc. 42 at

18.)  No objections were filed to the R&R and the Court adopted it by Order of February 26,

2021.  (Doc. 43.)

In their Amended Class and Collection Action Complaint (Doc. 23), Plaintiffs

generally allege the following:

> 3. Defendants willfully violated the FLSA, the PMWA, the WPCL, and
> Pennsylvania common law (collectively, the PMWA, WPCL, and Pennsylvania
> common law are referred to as "PA Laws") by: (1) improperly classifying
> Dancers as independent contractors; (2) failing to pay Dancers minimum wage;
> (3) failing to pay Dancers overtime for hours worked in excess of 40 hours per
> week; and (4) unlawfully taking or withholding a portion of Plaintiffs' and other
> Dancers' gratuities received from customers.
>
> 4. Specifically, Plaintiffs and other Dancers were not paid anything by
> Defendants. Rather, Defendants required Plaintiffs and other Dancers to
> perform adult entertainment work, such as stage and VIP room performances,
> solely for tips, and thereafter share the tips with Defendants.
>
> 5. Over the past two decades, the United States Department of Labor
> ("DOL") and courts across the country have recognized that dancers are
> employees, not independent contractors, and thus are entitled to protection
> under various state and federal wage and hour laws.

(Doc. 23 at 2-3.)

Plaintiffs specifically allege three Fair Labor Standards Act ("FLSA") violations: Count

I for Minimum Wage Violations; Count II for Overtime Wage Violations; and Count III for

Unlawful Tip Retention.  (Doc. 23 at 21-26.)

Plaintiffs' claim for Minimum Wage Violations in Count I includes the following

allegations:

99. At all relevant times, Defendants had a uniform policy and practice of willfully refusing to pay its employees for all hours worked.

100. As a result of the Defendants' willful failure to compensate its employees, including Plaintiffs and the members of the Collective, the applicable federal minimum wage for all hours worked, Defendants violated the FLSA, 29 U.S.C. § 201 et seq.

101. Defendants' conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

(Doc. 23 at 23.)

Plaintiffs' claim for Overtime Wage Violations in Count II includes the following

allegations:

104. At relevant times in the period encompassed by this Complaint, Defendants willfully refused to pay appropriate overtime compensation for all hours worked in excess of 40 hours per workweek due to Defendants' improper classification of Plaintiffs and Dancers as independent contractors.

105. As a result of Defendants' willful failure to compensate their employees, including Plaintiffs and members of the Collective, the appropriate overtime compensation for all hours worked in excess of 40 hours per workweek, Defendants violated the FLSA, 29 U.S.C. § 201 et seq.

106. Defendants' conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

(*Id.* at 24.)

Plaintiffs' claim for Unlawful Tip Retention in Count III includes the following

allegations:

109. At relevant times in the period encompassed by this Complaint, Defendants maintained a willful policy and practice of forcing Dancers to share a portion of their tips with Leave it to Beavers' managers and security personnel.

110. 29 U.S.C. § 203(m)(2)(B) provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

111. As a result of Defendants' willful practice of requiring their employees, including Plaintiffs and members of the Collective, to share a portion of their gratuities with Leave it to Beavers personnel, Defendants violated the FLSA, 29 U.S.C. § 201 et seq.

112. Defendants' conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

(*Id.* at 25-26.)

Plaintiffs filed the pending Motion on June 9, 2021. (Doc. 45.) With the filing of Plaintiffs' reply brief (Doc. 48) on July 7, 2021, the motion was fully briefed and ripe for disposition.

### III. LEGAL STANDARD

"Congress enacted the FLSA in 1938 with the goal of 'protect[ing] all covered workers from substandard wages and oppressive working hours.'" *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147 (2012) (quoting *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 739 (1981)) (citing 29 U.S.C. § 202(a)). The FLSA "is part of the large body of humanitarian and remedial legislation enacted during the Great Depression, and has been liberally interpreted." *Brock v. Richardson*, 812 F.2d121, 123 (3d Cir. 1987). The Supreme Court stated in *Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123,* 321 U.S. 590 (1944), that the provisions of the the Fair Labor Standards Act

6

are remedial and humanitarian in purpose. We are not here dealing with mere
chattels or articles of trade but with the rights of those who toil, of those who
sacrifice a full measure of their freedom and talents to the use and profit of
others. Those are the rights that Congress has specially legislated to protect.
Such a statute must not be interpreted or applied in a narrow, grudging manner.

*Id.* at 597.

As to the claimed Minimum Wage Violation in Count I of the Amended Class and

Collective Action Complaint (Doc. 23 at 21), the FLSA, 29 U.S.C. § 206(a), provides in

pertinent part:

Every employer shall pay to each of his employees who in any workweek is
engaged in commerce or in the production of goods for commerce, or is
employed in an enterprise engaged in commerce or in the production of goods
for commerce, wages at the following rates:

(1) except as otherwise provided in this section, not less than—

(A) $5.85 an hour, beginning on the 60th day after May 25, 2007;

(B) $6.55 an hour, beginning 12 months after that 60th day; and

(C) $7.25 an hour, beginning 24 months after that 60th day[.]

29 U.S.C. § 206(a).

Plaintiffs' claim for Overtime Wage Violations in Count II (Doc. 23 at 24) is governed

by 29 U.S.C. § 207(a) which provides as follows:

Except as otherwise provided in this section, no employer shall employ any of
his employees who in any workweek is engaged in commerce or in the
production of goods for commerce, or is employed in an enterprise engaged in
commerce or in the production of goods for commerce, for a workweek longer
than forty hours unless such employee receives compensation for his
employment in excess of the hours above specified at a rate not less than one
and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

Plaintiffs' claim for Unlawful Tip Retention in Count III (Doc. 23 at 25) is governed by 29 U.S.C. § 203 (m)(2)(B): "An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C.A. § 203 (m)(2)(B).

Regarding a collective action under the FLSA, the Act provides that an action may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated" and that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). The collective action "is a form of group litigation in which a named employee plaintiff or plaintiffs file a complaint 'on behalf of' a group of other, initially unnamed employees who purport to be 'similarly situated' to the named plaintiff." *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 223 (3d Cir. 2016). *Halle* further explains that

> [w]hen a named plaintiff files a complaint containing FLSA collective action allegations, the mere presence of the allegations does not automatically give rise to the kind of aggregate litigation provided for in Rule 23. Rather, the existence of a collective action depends upon the affirmative participation of opt-in plaintiffs. *See Smith v. T–Mobile USA, Inc.*, 570 F.3d 1119, 1121 (9th Cir. 2009); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008). Courts are then called upon to decide whether those who purport to join the collective action are "similarly situated" as intended by the statute. Because there are no formal procedural rules that mandate how to accomplish this task,

> courts have developed a practical approach to managing FLSA collective
> actions. This approach, which has been recognized by the Supreme Court and
> is widely accepted in most jurisdictions, is a two-step certification process.
> *See Genesis Healthcare* [*v. Symczyk,* 133 S. Ct. 1523, 1530 (2013)]; *Zavala v.
> Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012).

*Id.* at 224. The Court of Appeals for the Third Circuit has described the two-step process as

follows:

> The first step, so-called conditional certification, requires the named plaintiffs
> to make a "modest factual showing" to demonstrate "a factual nexus between
> the manner in which the employer's alleged policy affected him or her and the
> manner in which it affected the proposed collective action members." *[Halle,*
> 842 F.3d] at 224.
>
> The second step, final certification . . . requires that "the named plaintiffs
> bear the burden of showing that the opt-in plaintiffs are 'similarly situated' to
> them for FLSA purposes." *Id.* at 226. "Being 'similarly situated' ... means that
> one is subjected to some common employer practice that, if proved, would help
> demonstrate a violation of the FLSA." *Id.* (quoting *Zavala v. Wal Mart Stores
> Inc.*, 691 F.3d 527, 538 (3d Cir. 2012)).

*Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 85 (3d Cir. 2017). The "opt-in"

requirement mandates that each individual must file an affirmative consent to join

the collective action. *Id.* at 225.

Considering the first step of the process which is at issue here, *Halle* explained that

"the 'sole consequence' of conditional certification is the dissemination of court-approved

notice to potential collective action members." 842 F.3d at 224 (quoting *Genesis

Healthcare*, 133 S. Ct. at 1530). Thus, "[c]onditional certification . . . is not a true

certification, but rather an exercise of a district court's discretionary authority to oversee and

9

facilitate the notice process." *Id.* (citing *Zavala*, 691 F.3d at 536 (citing *Hoffman–La Roche v. Sperling*, 493 U.S. 165 (1989)).

## IV. ANALYSIS

Of the numerous issues raised in Plaintiffs' Motion, *see supra* p. 1-2, the legal framework set out above indicates that the first question is whether Plaintiffs have demonstrated the required factual nexus under step one of the certification process.

## A. Factual Nexus Between Named Plaintiffs and Proposed Collective Action Members

Plaintiffs assert that they have met the required standard in that they have shown that "the proposed collective Dancers employed at the Club is similarly situated." (Doc. 46 at 11.) Defendants contend that Plaintiffs are not similarly situated to others. (Doc. 47 at 9.) The Court concludes that Plaintiffs have made "the modest factual showing . . . demonstrating a factual nexus between the manner in which the employer's alleged policy affected . . . her and the manner in which it affected the proposed collective action members." *Halle*, 842 F.3d at 224 (internal quotation omitted).

Plaintiffs have produced a Declaration from each of the three named Plaintiffs which detail the way the Club's policies affected them. (Docs. 46-1, 46-2, 46-3.) Each Declaration states that "[a]ll dancers were compensated in the same way and were subjected to the same rules, fines, and fees." (Doc. 46-1 ¶ 27; Doc. 46-2 ¶ 25; Doc. 46-3 ¶ 25.) Each of the named Plaintiffs also asserts that the dancers communicated with one another about the terms and conditions of their employment at the Club. (*Id.*) The general application of

policies affecting the named Plaintiffs and proposed collective members is supported by

Facebook posts addressed to all dancers which are submitted as Exhibits supporting each

Declaration (Doc. 46-1 at 13-23; Doc. 46-1 at 12-20; Doc. 46-3 at 12-20).

Given the circumstances of this case and the nature of the supporting evidence, the

Court does not agree with Defendants that identical assertions made in the Declarations

undermines Plaintiffs' credibility.  (*See* Doc. 47 at 5.)  Further, at this stage of the

proceedings, Plaintiffs need not produce the type of evidence sought by Defendants.  (*See*

*id.* at 6-8.)

Defendants quote numerous cases to support their assertion that Plaintiffs have

failed to make the requisite showing.  (Doc. 47 at 8-15 (*quoting Armstrong v. Weichert*

*Realtors*, Civ. A. No. 05-3120, 2006 WL 1455781 (D.N.J. May 19, 2006); *Mitchell v.*

*Covance, Inc.*, 438 F. Supp. 3d 341 (E.D. Pa. 2020); *Wright v. Lehigh Valley Hospital*, Civ.

A. No. 10-431, 2010 WL 3363992 (E.D. Pa. Aug. 24, 2010); *Doe 1 v. Banc, Jack & Joe,*

*LLC*, Civ. A. No. 17-CV-03843 (2018 WL 7254693 (D.N.J. Nov. 21, 2018); *Pecor v. North*

*Point EDC, Inc.*, Civ. A. No. 16-C-1263, 2017 WL 3723600 (E.D. Wis. June 9, 2017)).)

However, in each of these cases the district court found a single named plaintiff's

allegations insufficient to show how proposed collective action members were similarly

affected.  In contrast, here multiple Plaintiffs have presented evidence that they and all other

dancers at the Club were subject to the same compensation structure, rules, fines, and

fees.

This case is analogous to those cited by Plaintiffs where either a single plaintiff provided multiple supporting declarations or the case was brought by multiple plaintiffs and the reviewing district court found conditional certification requirements were met based on evidence of policies, practices, and postings applicable to proposed collective members. (Doc. 48 at 3-4 (citing *Meals v. Keane Frac GP LLC*, Civ. A. No. 16-1674, 2017 WL 2445199, at *5 (W.D. Pa. June 6, 2017); *Carr v. Flowers Foods, Inc.*, Civ. A. No. 15-6391, 2017 WL 393604, at *10-11 (E.D. Pa. Jan. 9, 2017); *Hively v. Allis-Chalmers Energy, Inc.*, Civ. A. No. 13-CV-106, 2013 WL 5936418 (W.D. Pa. Nov. 5, 2013)).)

Based on the foregoing, the Court concludes that the evidence produced by Plaintiffs, *see supra* p. 9, is sufficient to show the required "factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members," *Halle*, 842 F.3d at 224.[1]

## B. Equitable Tolling

Plaintiffs assert that the statute of limitations should be equitably tolled as to opt-in plaintiffs. (Doc. 46 at 13.) In their proposed order, Plaintiffs specifically request the Court to toll the statute of limitations for all potential collective members from the date this action was

---

[1] Defendants show no connection between conditional certification requirements and their allegation that Plaintiff Quagliariello is a "serial plaintiff" who has previously been involved in similar litigation (Doc. 47 at 2-3). Thus, these allegations require no further discussion. Similarly, Defendants' assertion that only one individual has opted in during the pendency of this litigation (*id.* at 16) is of no significance at this stage of the litigation—as set out above, the purpose of conditional certification is to oversee and facilitate the notice process, *Halle*, 842 F.3d at 224, and the FLSA does not require that earlier notice and response are needed to proceed.

filed—April 27, 2020—through a deadline to be established by the Court for the collective

members to file their respective consents to join this action. (*See* Doc. 45 at 9.)

Defendants maintain tolling the statute of limitations is not appropriate. (Doc. 47 at 13.)  For

the reasons that follow, the Court concludes that equitable tolling is appropriate for the

limitations period applicable to opt-in collective members.

The FLSA provides that an action for unpaid minimum wages, unpaid overtime

compensation, or liquidated damages must be commenced within two years of the alleged

violation or within three years after the cause of action accrued for willful violations.  29

U.S.C. § 255(a).  For named plaintiffs, the action is commenced on the date the complaint is

filed.  29 U.S.C. § 256.  For opt-in plaintiffs, the action is not commenced until the date on

which the opt-in plaintiff files written consent.  *Id.*

Pertinent to the issue before this Court, *Depalma v. Scotts Co. LLC*, Civ. A. No. 13-

7740, 2017 WL 1243134, at *2 (D.N.J. Jan. 20, 2017), noted the commencement delay for

opt-in plaintiffs creates a potential trap for them:

> an opt-in's FLSA claim may become untimely prior to her having received court-
> authorized notice, because the filing of the collective action complaint has no
> tolling effect as to her claims. Opt-in plaintiffs' FLSA claims are therefore
> particularly vulnerable to the running of the statute of limitations while motions
> for conditional certification and notice remain undecided.

*Depalma*, 2017 WL 1243134, at *2.

It is well established that a court may "rescue a claim otherwise barred as untimely

by a statute of limitations when a plaintiff has 'been prevented from filing in a timely manner

due to sufficiently inequitable circumstances.'" *Santos v. United States, 559 F.3d 189, 198*

*(3d Cir. 2009)* at 197 (quoting *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240

(3d Cir. 1999)).  "Tolling is an extraordinary remedy and is proper only when the 'principles

of equity would make the rigid application of a limitation period unfair." *D.J.S.-W. by Stewart*

*v. United States*, 962 F.3d 745, 750 (3d Cir. 2020) (internal quotations omitted).  D.J.S.-W.

explained that

> [o]ur Court uses the term "equitable tolling" broadly to encompass several
> situations under which a statute of limitations period may be tolled on equitable
> grounds. We have said that:
>
> > [T]here are three principal, though not exclusive, situations in
> > which equitable tolling may be appropriate: (1) where the
> > defendant has actively misled the plaintiff respecting the
> > plaintiff's cause of action; (2) where the plaintiff in some
> > extraordinary way has been prevented from asserting ... her
> > rights; or (3) where the plaintiff has timely asserted ... her rights
> > mistakenly in the wrong forum.
>
> *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir.
> 1994), *abrogated on other grounds by Rotkiske v. Klemm*, 890 F.3d 422, 428
> (3d Cir. 2018) (en banc), *aff'd* --- U.S.---, 140 S. Ct. 355, 205 L.Ed.2d 291
> (2019). In addition, a litigant "will not receive the benefit of" tolling in any of
> these situations "unless she exercised due diligence in pursuing and preserving
> her claim." *Santos*, 559 F.3d at 197.

*D.J.S.-W.*, 962 F.3d at 750.  As the Circuit Court has previously stated, "[i]n the final

analysis, . . . 'a statute of limitations should be tolled only in the rare situation where

equitable tolling is demanded by sound legal principles as well as the interests of

justice.'" *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999) (quoting *Midgley,* 142 F.3d at

179 (quotations marks and citation omitted).

14

Plaintiffs contend that equitable tolling is warranted because Defendants actively misled dancers about their employment status by presenting them with a contract identifying them as independent contractors and failing to inform employees (the potential class members) through required posting of their FLSA rights pursuant to FLSA regulations. (Doc. 46 at 16-17.)   At this stage of the litigation, the Court concludes that Plaintiffs have sufficiently pled that Defendants misled Club dancers by asserting that they were independent contractors.  (*See, e.g.*, Doc. 23 ¶¶ 3, 5, 8, 10, 11, 24.)  The conditional certification decision in the previous section of this Memorandum Opinion indicates that the Amended Class and Collective Action Complaint (Doc. 23) sufficiently pleads that potential opt-in plaintiffs were similarly misled.  Therefore, equitable tolling is appropriate based on evidence that Defendants actively misled named and potential plaintiffs respecting their cause of action.  *See Oshiver*, 38 F.3d at 1387.

Decisions on this issue may form a basis for reconsideration in specific cases as discovery proceeds.[2]  However, the Court further concludes that equitable tolling is appropriate given the Court's managerial responsibility in the certification process and this basis for equitable tolling is not subject to individual case reconsideration.

In *Jones v. Giant Eagle, Inc.*, Civ. A. No. 2:18-CV-282, 2019 WL 4743687 (W.D. Pa. Sept. 30, 2019), the District Court carefully considered the application of equitable tolling in

---

[2] The completion of fact discovery in this case is keyed to the Court's ruling on the pending motion. (Doc. 35 at 9 ("All fact discovery commenced in time to be completed by: 180 days after the Court's ruling on conditional collective certification.").)

the FLSA opt-in context, relying in part on the Supreme Court's discussion of the statutory

provisions allowing plaintiffs the opportunity to proceed collectively in *Hoffman-LaRoche,*

*Inc. v. Sperling*, 493 U.S. 165 (1989):[3]

> The Court specifically recognized two significant benefits Congress sought to realize through its policy of authorizing collective actions: (1) the benefits to plaintiffs through the pooling of resources and lower individual costs to vindicate their rights and (2) the benefits to the judicial system through efficient resolution in a single proceeding of common issues of law and fact arising from the same alleged activity.  [493 U.S. at 170.]

> . . . [T]he Court recognized that these central benefits "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* The significance that timely notice has on effectuating these benefits in the statutory scheme was made apparent when the Court further emphasized:

>> Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure. *See* Fed. Rule Civ. Proc. 83. It follows that, once a [collective] action is filed, the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way.

> *Id.* at 170-71.

Pursuant to *Hoffmann-LaRoche*, district courts have a managerial responsibility to oversee the certification process in an efficient and proper

---

[3] As noted in *Jones*, "[t]he collective action in *Hoffmann-LaRoche* was brought under the Age Discrimination in Employment Act of 1967 ("ADEA"). The ADEA incorporates the collective action provision, 29 U.S.C. § 216(b), of the Fair Labor Standards Act of 1938. *See* 29 U.S.C. § 626(b)."  2019 WL 4743687, at *4 n.4.

manner in order to ensure that potential class members receive "timely notice concerning the pendency of the collective action." *Id*. Indeed, the Court expressly held that "district courts have discretion" in collective actions "to implement § 216(b)] by facilitating notice to potential plaintiffs" in order to carry out that managerial responsibility. *Id.* at 169.

> Subsumed within the court's managerial responsibility is the ability to manage the certification process in a manner that does not frustrate the very purposes of the statute.

*Jones*, 2019 WL 4743687, at *4–5.

*Jones* and *Depalma* concluded that exercise of the court's managerial responsibility to ensure timely notice required some measure of equitable tolling because the resolution of preliminary matters and the disposition of the class certification motions "rendered the opt-in plaintiffs' claims particularly vulnerable to the continued running of the state of limitations.'" *Jones*, 2019 WL 4743687, at * 5, 6 (quoting *Depalma*, 2017 WL 1243134, at *2). *Messenger v. Cabot Oil & Gas Corporation*, Civ. A. No. 3:19-CV-308, 2021 WL 2530614 (M.D. Pa. June 21, 2021) (Mannion, J.), arrived at a similar conclusion where "the delay was attributable to numerous factors, none of which are the fault of the opt-in plaintiffs." *Id.* at *7 (citing *Yahraes v. Restaurant Assocs. Events Corp.*, No. 10-cv-935, 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011) (collecting cases) ("[T]he delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an 'extraordinary circumstance' justifying application of the equitable tolling doctrine."); *McGlone v. Cont. Callers, Inc.*, 867 F.Supp.2d 438, 445 (S.D.N.Y. 2012) ("While plaintiffs wishing to pursue their rights cannot sit on them indefinitely, those whose putative

class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in rulings."); *Stickle v. SCI Western Mkt. Support Ctr.*, No. 08-083, 2008 WL 4446539, at *22 (D. Ariz. Sept. 29, 2008) ("the inherent benefits of the collective action 'will disappear' if [opt-in] plaintiffs are not notified of the suit before their statute of limitations expires") (quoting *Hoffmann-La Roche,* , 493 U.S. at 170)).

The managerial responsibility expressed in *Depalma*, *Jones*, and *Messenger* is relevant here because over two years have elapsed between the filing of this action and the resolution of the conditional class certification motion (a period of time which is similar to that in *Messenger*, exceeds that in *Jones*, and is slightly less than that in *Depalma*) with no fault attributable to potential opt-in plaintiffs.[4]   Therefore, as in the cited cases, equitable tolling is appropriate in this case because the delay in administering the certification process has, to date, deprived the contemplated opt-in parties "of the ability to make informed decisions about their potential rights through no fault of their own."  *Jones*, 2019 WL

---

[4] Plaintiffs filed their Class and Collective Action Complaint (Doc. 1) on April 27, 2020.  Defendants DiPasquale and Craig filed a motion to dismiss (Doc. 16) on June 29, 2020, and Plaintiffs filed the Amended Class and Collective Action Complaint ("Amended Complaint") (Doc. 23), on July 20, 2020.  On August 3, 2020, Defendants DiPasquale and Craig filed the Motion of Defendants Leonard DiPasquale and Duane Craig to Dismiss the Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, in the Alternative, for Summary Judgment under Fed. R. Civ. P. 56.  (Doc. 25.)  The matter was referred to Magistrate Judge Martin C. Carlson for the preparation of a Report and Recommendation ("R&R").  The R&R was issued on February 9, 2021, and this Court adopted the R&R by Order of February 26, 2021. (Docs. 42, 43.)  On June 9, 2021, Plaintiffs filed the motion under consideration here, Plaintiffs' Motion to Conditionally Certify a Fair Labor Standards Act Collective Action and Send Notice to the Collective (Doc. 45).

4743687, at *6; *see also DePalma*, 2017 WL 1243134, at *7. This result is consistent with

the remedial nature of the FLSA, *Tennessee Coal*, 321 U.S. at 597, and the practical

approach to managing FLSA collective actions fostered by the Supreme Court and the

Court of Appeals for the Third Circuit, *Genesis Healthcare*, 133 S. Ct. 1530; *Halle*, 842 F.3d

at 224.

Given the dual basis for equitable tolling, the Court will toll the statute of limitations

as of the date of the filing of the Class and Collective Action Complaint (Doc. 1), April 27,

2020. The statute of limitations will be tolled though the deadline to be established by the

Court for the collective class members to file their consents to join this collective action.

## C. <u>Statute of Limitations</u>

Plaintiffs also request that notice be given for a three-year period, i.e, that the statute

of limitations in this case should be three years based on willful violations of the FLSA

pursuant to 29 U.S.C. § 255(a). (*See* Doc. 46 at 13-14.) Defendants do not address this

issue in their opposition brief. (*See* Doc. 47.)

In *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 129 (1988), "the Supreme Court

addressed 'the meaning of the word 'willful' as used in the statute of limitations applicable to

civil actions to enforce the Fair Labor Standards Act.'" *Stone v. Troy Construction, LLC*, 935

F.3d 141, 148 (3d Cir. 2019). "[B]ased on legislative history and the common and legal

usage of the word 'willful' – 'considered synonymous with such words as voluntary,

deliberate, and intentional' – the Court concluded that a violation of the FLSA was willful if,

19

at minimum, the employer 'showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA.]'" *Id.* (quoting *McLaughlin*, 486 U.S. at 132-33). Therefore, "willfulness under the FLSA is established where 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA.]'" *Id.* at 150 (quoting *McLaughlin*, 486 U.S. at 133. Further,

> [a]lthough willfulness is a "question of fact," *Bianchi Trison Corp. v. Chao*, 409 F.3d 196, 208 (3d Cir. 2005), a district court may take the question from the jury and grant a Rule 50(a) motion for judgment as a matter of law if "there is no legally sufficient evidentiary basis for a reasonable jury to find for" the non-moving party, *Rego v. ARC Water Treatment Co.*, 181 F.3d 396, 400 (3d Cir. 1999).

*Souryavong v. Lackawanna Cnty.*, 872 F.3d 122, 126 (3d Cir. 2017)

Clearly, given the relevant legal context, the Court cannot make a determination on willfulness based on the current record. *See supra* p. 15 n.2. However, from an administrative perspective, numerous allegations of willfulness in the Amended Class and Collective Action Complaint (Doc. 23), *see supra* pp. 4-6, indicate that, pursuant to the Court's managerial responsibility to oversee the certification process in an efficient and proper manner, the time period identified in the notice should be three years to ensure that all potential collective action members receive proper notification of the pending action. If Plaintiffs do not establish willfulness as this litigation proceeds, only claims which accrued within the then-applicable two-year limitations period will go forward.

**D. Production of Plaintiffs' Requested Information**

Plaintiffs ask the Court to order Defendant Leonard DiPasquale, individually and t/b/d/a Leave it to Beavers Gentlemen's Club, to provide Plaintiffs' counsel with a list of members of the collective, including each Dancer's full name, last known address, current or last known personal e-mail address, and dates of employment.  (Doc. 45 at 9; Doc. 47 at 18.)  Defendants respond that this request is not workable because the contact information from entertainers does not include e-mail addresses and they should only be required to provide information which they keep in the ordinary course of business.  (Doc. 47 at 17-18.)  Plaintiffs respond that the statement regarding the lack of e-mail information is only "the unsworn testimony of counsel, rather than a declaration from the principals" and, therefore, they reiterate their request for the information.  (Doc. 48 at 15-16.)

Based on the parties' respective positions on this issue, the Court will direct Defendants to provide the requested information.  If Defendants are not able to provide the requested information, they will be required to provide a declaration as to why they are unable to do so.

**E. Other Matters**

Finally, Plaintiffs' request that "the Court allow their counsel to send a follow-up notice to any potential class members who have not responded after the mailing of the initial notice as well as order the Club to post the notice at the Club in conspicuous places as

soon as the Club reopens."[5]  (Doc. 46 at 19.)   In their opposition brief, Defendants merely state that "a single notice should be sent."  (Doc. 47 at 18.)

Plaintiffs provide authority from district courts within the Third Circuit to support their requests.  (Doc. 46 at 19 (citing *Garcia v. Vertical Screen, Inc.*, 387 F. Supp. 3d 598, 608 (E.D. Pa. 2019) (Authorizing dissemination of notice by e-mail and finding that "Courts in this Circuit regularly permit follow-up notices and posting of the notice at work sites of the defendant.") (quoting *Archer v. Defs., Inc.*, No. 18-470, 2018 WL 5962470, at *4 (D. Del. Nov. 14, 2018)); *Arroyo v. Aspect Construction Services, Inc.*, No. CV 19-5317, 2020 WL 4382009, at *6 (E.D. Pa. July 31, 2020) (granting Plaintiff's request to obtain the putative class's current or last known e-mail address and allowing Plaintiff's request to send a follow-up notice e-mail to putative plaintiffs who did not respond to an initial mailing).  Because Defendants provide no meaningful response, the Court will allow Plaintiffs to send a follow-up notice and will direct Defendants to post the notice at the Club.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiffs' Motion to Conditionally Certify a Fair Labor Standards Act Collective Action and Send Notice to the Collective (Doc. 45).  The Court will conditionally certify a collective action consisting of all current and former exotic dancers who provided services at Leave it to Beavers Gentlemen's Club at any time from April 27, 2017, through the entry of final judgment in this case.  The FLSA

---

[5] Plaintiffs note that the Club was closed due to the COVID-19 pandemic.  (Doc. 46 at 19 n.5.)

statute of limitations will be tolled for all potential class members from April 27, 2020,

through the date of the deadline to be established by the Court for all collective members to

file their respective consents to join this collective action.  Defendants will be required to

provide requested information about all person who provided services as dancers since at

the Leave it to Beavers Gentlemen's Club since April 27, 2017.  Counsel for Plaintiffs will be

permitted to send notice of the pendency of this collective action to potential collective

members in a form approved by the Court.  Counsel for Plaintiffs will be directed to submit a

proposed form of notice for approval by the Court within fourteen (14) days of the date of

this Memorandum Opinion and accompanying Order.  Defendants will be allowed seven (7)

days thereafter to submit their objections to the proposed form of notice.  Counsel for

Plaintiffs will be permitted to send a follow-up notice in a form approved by the Court.

Counsel for Plaintiffs will be directed to submit a proposed form of follow-up notice for

approval by the Court within fourteen (14) days of the date of this Memorandum Opinion

and accompanying Order.  Defendants will be allowed seven (7) days thereafter to submit

their objections to the proposed form of follow-up notice.   Defendants will be ordered to

post the notice of the pendency of this collective action in locations which will be

conspicuous to Club dancers.  The Court will enter a separate Order.

Robert D. Mariani
United States District Judge